IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BOBBY C.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

        Defendant.

Case No. 6:18-cv-01944-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Bobby C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.      PLAINTIFF'S APPLICATION**

Plaintiff was born in September 1966, making him forty-seven years old on May 13, 2014, the day he filed his protective application.[2] (Tr. 15, 26.) Plaintiff has a "limited education" and no past relevant work experience. (Tr. 26, 39, 237.) In his SSI application, Plaintiff alleges

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

disability due to an amputation below the right knee, a learning disorder, and anxiety. (Tr. 58, 76.)

The Commissioner denied Plaintiff's SSI application initially and upon reconsideration, and on July 14, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on September 20, 2017. (Tr. 37-56.) On October 2, 2017, the ALJ issued a written decision denying Plaintiff's SSI application. (Tr. 15-27.) Plaintiff now seeks judicial review of that decision.

## II.     THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 13, 2014, the day he filed his protective application. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[B]elow the knee amputation right lower extremity, other arthropathies, borderline intellectual functioning (BIF), and affective disorder." (Tr. 17.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 18.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: (1) Plaintiff can perform "simple, routine tasks with a SVP [of] 1-2," (2) Plaintiff can occasionally balance, kneel, crouch, crawl, climb ramps and stairs, and "reach overhead with [his] right upper extremity," (3) Plaintiff can stoop without limitation, (4) Plaintiff can never "push/pull with [his] right lower extremity," (5) Plaintiff can never climb ladders, ropes, or scaffolds, (6) Plaintiff needs to avoid exposure to workplace hazards, (7) Plaintiff can "push/pull frequently with [his] right upper extremity," (8) Plaintiff can "sit for 6/8 hours" during an eight-hour workday, (9) Plaintiff can "stand/walk for 4/8 hours" during an eight-hour workday, and (10) Plaintiff can "lift/carry 20 pounds occasionally and 10 pounds frequently." (Tr. 20.) At step four, the ALJ concluded that Plaintiff had no past relevant

work experience. (Tr. 26.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a ticket taker, information clerk, production assembler, and small products assembler. (Tr. 26.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide any reason for rejecting the non-examining state agency physicians' opinion that "a hand-held assistive device is medically required," (2) failing to provide a legally sufficient reason for discounting the consultative examiner's opinion that Plaintiff's cane is a "medical necessity," and (3) failing to provide legally sufficient reasons for discounting the opinions of the non-examining state agency psychologists. (Pl.'s Opening Br. at 4-7.) As explained below, the Court concludes that the ALJ's decision is based on harmful legal error and not supported by substantial evidence in the record. Accordingly, the Court remands this case for further proceedings consistent with this opinion.[3]

## I.      APPLICABLE LAW

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are

---

[3] Plaintiff acknowledges that a remand for further proceedings, as opposed to a remand for benefits, is appropriate here. (*See* Pl.'s Opening Br. at 5, 7, explaining that "[t]he ALJ's decision must be remanded for further consideration").

supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

## II. ANALYSIS

### A. Plaintiff's Physical Impairments

Plaintiff challenges the ALJ's assessment of the opinions provided by, among others, the non-examining state agency physicians, Peter Bernardo, M.D. ("Dr. Bernardo") and Neal Berner, M.D. ("Dr. Berner"). Drs. Berner and Bernardo's opinions conflict in certain respects with the opinion of the consultative examiner, Jonathan Harrison, M.D. ("Dr. Harrison").[4] The ALJ

---

[4] Drs. Berner and Bernardo determined that Plaintiff can sit for six hours during an eight-hour workday, can engage in occasional climbing of ramps and stairs, and can never climb ladders, ropes, or scaffolds. (Tr. 70, 88-89.) By contrast, Dr. Harrison determined that Plaintiff does not have a "[m]aximum sitting capacity," and that Plaintiff can "frequently climb." (Tr. 414.) Dr. Berner's opinion also conflicts with Dr. Bernardo's opinion. Dr. Bernardo opined that Plaintiff can occasionally kneel, crouch, or crawl. (Tr. 89.) Dr. Berner, on the other hand, opined that Plaintiff can never kneel, crouch, or crawl. (Tr. 70.) The postural limitations in the ALJ's RFC are consistent with Dr. Bernardo's opinion and inconsistent with Dr. Berner's. (*See* Tr. 20.)

therefore needed to provide specific and legitimate reasons for rejecting Drs. Berner and Bernardo's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'") (citation omitted); *Kilian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons."). As explained below, the Court finds that the ALJ committed reversible error.

Drs. Berner and Bernardo reviewed Plaintiff's medical records and provided opinions on Plaintiff's work-related limitations. Drs. Berner and Bernardo's opinions regarding Plaintiff's postural limitations were based on Plaintiff's "need for" an assistive device. (Tr. 70, 89.) The ALJ assigned "[g]reat weight" to Drs. Berner and Bernardo's opinions, finding them "consistent with the nature of [Plaintiff's] physical impairment, the medical evidence of record, and [Plaintiff's] daily activities." (Tr. 23.) The ALJ did not provide any reasons for rejecting these opinions.

Plaintiff argues that the ALJ committed a harmful error here because the ALJ assigned great weight to Drs. Berner and Bernardo's opinions but failed to formulate an RFC that accounted for Drs. Berner and Bernardo's opinion that Plaintiff needs an assistive device. *See generally Valentine*, 574 F.3d at 690 ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out all the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective.") (citation omitted).

The Commissioner acknowledges that the ALJ "failed to specifically address" Drs. Berner and Bernardo's opinion that Plaintiff needs an assistive device. (Def.'s Br. at 5.) The Commissioner, however, argues that the error was harmless because the ALJ gave a legally sufficient reason for discounting Dr. Harrison's opinion that Plaintiff needs a cane. The Court disagrees.

Like Drs. Berner and Bernardo, the ALJ assigned "great weight" to Dr. Harrison's opinion, finding it "consistent with the extensive, objective examination that was unremarkable for any significant problems and the limited medical treatment record, suggesting minimal functional issues." (Tr. 23.) The ALJ, however, discounted Dr. Harrison's opinion that "a cane was medically necessary" because, according to the ALJ, Plaintiff "denied using" a cane. (Tr. 23.)

During the September 2017 hearing before the ALJ, Plaintiff explained that he "use[s] the cane because [he] get[s] lots of sores and blisters" on his leg due to his prosthetic, and that he arrived without his cane because he "left it at the camp." (Tr. 47.) Contrary to the ALJ's finding, Plaintiff did not deny that he uses a cane. In fact, the record clearly reflects Plaintiff's use of his cane. When Plaintiff completed his adult function report on July 5, 2014, he reported that he uses a cane and crutches. (Tr. 265; *see also* Tr. 359, reflecting that on October 18, 2013, about seven months before the protective filing date, Oregon Department of Corrections medical personnel "encouraged" Plaintiff "to use crutches" because the skin on his leg had "rubbed off" and was "bright pink and tender"; Tr. 539, noting on July 29, 2015, that Plaintiff had "healing blisters" and "numerous pink satellite lesions"). Further, when Dr. Harrison examined Plaintiff on October 18, 2014, Plaintiff "walk[ed] with a cane on the right side and demonstrate[d] a moderate to severe limp[.]" (Tr. 412.)

PAGE 8 – OPINION AND ORDER

The Commissioner argues that other record evidence supports the ALJ's decision to reject Dr. Harrison's opinion (and by consequence, Dr. Berner and Bernardo's opinion) that Plaintiff needs an assistive device. (Def.'s Br. at 4.) In support of this argument, the Commissioner notes that certain records from 2015 to 2017 fail to reflect that Plaintiff used a cane. (Def.'s Br. at 4.) However, Plaintiff's records also reflect that he was encouraged to use an assistive device to help alleviate pressure and combat the pain and sensitivity caused by his prosthetic leg. (*See* Tr. 359.) Importantly, the record also reflects that Plaintiff continues to suffer from "raw skin on [his leg]" and "lots of sores and blisters." (Tr. 47, 498.) Thus, substantial evidence does not support the ALJ's finding that Plaintiff does not require an assistive device.

For these reasons, the Court concludes that the ALJ failed to give a legally sufficient reason for discounting Dr. Harrison's opinion that a cane is medically necessary, and therefore the ALJ committed a harmful error when he failed to provide any reason for discounting Drs. Berner and Bernardo's opinion that Plaintiff requires a handheld assistive device. *See Coleman v. Colvin*, No. 14-7991, 2015 WL 2415447, at *6 (C.D. Cal. May 20, 2015) ("Based on the foregoing, the ALJ failed to provide legally sufficient reasons for not including Dr. Taylor's finding regarding plaintiff's need for a cane in her RFC determination. Remand is warranted."); *see also Shultz v. Berryhill*, No. 17-cv-1823, 2018 WL 4680052, at *5 (S.D. Cal. Sept. 28, 2018) ("'If a claimant has a genuine medical need for a cane, such a limitation should be included in any hypothetical questioning of the VE.'") (citation omitted).[5]

---

[5] On remand, the ALJ needs to reassess Plaintiff's RFC and address the fact that Drs. Berner and Bernardo offered conflicting opinions regarding Plaintiff's postural limitations. The ALJ appeared to credit Dr. Bernardo's opinion over Dr. Berner's opinion, even though the ALJ assigned great weight to Dr. Berner's opinion and provided no reasons for discounting it. (*See* Tr. 23, assigning "[g]reat weight . . . to the State agency medical consultants' opinions"; Tr. 20, 70, reflecting that the ALJ formulated an RFC that is inconsistent with Dr. Berner's opinion).

### B. Plaintiff's Mental Impairments

Plaintiff also challenges the ALJ's assessment of the non-examining state agency psychologists' opinions. The Court does not address this issue because Plaintiff acknowledges that the Court needs to remand this case for further proceedings. *See Tucker v. Berryhill*, No. 18-cv-01861-RMI, 2019 WL 4738222, at *7 (N.D. Cal. Sept. 27, 2019) ("[B]ecause the court is already remanding the case for further proceedings, the court does not find it necessary to address Plaintiff's remaining issues (finding Plaintiff does not meet or equal a listing; failing to evaluate the medical opinions of Dr. Bui and Dr. Her; assessing Plaintiff's residual functional capacity; and determining Plaintiff's credibility) because the claims can be adequately addressed on remand, and because neither can secure for Plaintiff any relief beyond what is already being granted."); *Dahser v. Astrue*, No. 09-cv-6139–BR, 2010 WL 4923101, at *7 (D. Or. Nov. 29, 2010) ("In light of the Court's decision below that a remand for further proceedings is necessary to permit the ALJ to further consider the evidence consistent with this Opinion and Order, the Court need not address Plaintiff's remaining arguments.").

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 9th day of December, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge